Norman RICH et al., Plaintiffs-Appellants,

v.

NEW YORK STOCK EXCHANGE et al., Defendants-Appellees.

No. 676, Docket 74–2242.

United States Court of Appeals, Second Circuit.

Argued March 12, 1975.

Decided July 8, 1975.

Alfred S. Julien, New York City (Julien & Schlesinger, P.C., Stuart A. Schlesinger, David A. Jaroslawicz, New York City, on the brief), for plaintiffs-appellants.

Russell E. Brooks, New York City (Milbank, Tweed, Hadley & McCloy, Richard C. Tufaro, New York City, on the brief), for appellee New York Stock Exchange, Inc.

7.  *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Arnold I. Roth, New York City (Rosenman, Colin, Kaye, Petschek, Freund & Emil, New York City, on the brief), for appellee Ladenburg Thalmann & Co., Inc.

Before MOORE, FEINBERG, and MANSFIELD, Circuit Judges.

MOORE, Circuit Judge:

Plaintiffs,[1] a group of investors, suing on behalf of themselves and all other similarly situated, who were customers of the brokerage firm of Weis Securities, Inc. (Weis) "during April and May of 1973" appeal from a judgment dismissing their second amended complaint against New York Stock Exchange (NYSE), Ladenburg Thalmann & Co., Inc., (Ladenburg), Arthur Levine, Sol Leit, Allen Solomon and Joel Kubie (officers of Weis).[2] The dismissal resulted from a motion for summary judgment made by the NYSE and Ladenburg. The nature and extent of that motion lie at the heart of this appeal—hence a brief review of the pleadings, the motion itself and the material presented to the district court is required.

The original complaint was followed by a voluntary amended complaint. A second amended complaint (the complaint) was served pursuant to a court order for a more definite statement. This complaint, brought as a class action, alleged five causes of action. The first cause of action, after alleging that pursuant to 15 U.S.C. § 78f the NYSE undertook to police the conduct of its members, made specific allegations that "during April and May 1973" plaintiffs had margin accounts with Weis; that "in or about April and May 1973" the NYSE, Ladenburg and the individual defendants "had knowledge that Weis was in violation of the net capital requirements and was in financial difficulty; " that NYSE and Ladenburg, knowing of this situation, conspired to have certain privileged customers transfer their accounts to other brokerage firms, including Ladenburg, all in alleged violation of the Securities Exchange Act of 1934 and in particular, 15 U.S.C. §§ 78f and 78j. The second cause of action claims a violation of 15 U.S.C. § 78j and the Securities and Exchange Commission's Rule 10b–5; and the third cause of action is against Ladenburg, in effect, for accepting the transferred accounts. The fourth cause of action refers to a registration statement allegedly filed by the NYSE with the Securities and Exchange Commission whereby the NYSE contracted to discipline the conduct of its members. The fifth cause of action contains the conclusory allegation that the NYSE "failed to adequately police Weis although it had knowledge that Weis was in violation of various sections of the Securities and Exchange Act of 1934." An answer and cross-claims were filed by the NYSE and an amended answer and cross-claims by Ladenburg.

Plaintiffs' amended complaint advanced essentially two theories of recovery. First, they alleged that the Exchange failed to discharge the duty imposed by section 6(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78f(b),[3] which deals with registration of securities exchanges, by failing prop-

---

1. Plaintiffs-appellants Rich, S. Schiff, and H. Schiff are trustees of the West Side Corp. Profit Sharing Plan which maintained an account at Weis. Plaintiffs S. Margulies, L. Margulies, and M. Margulies stipulated to a discontinuance of their action with prejudice.

2. The district court's opinion is reported at 379 F.Supp. 1122.

3. Section 6(b) provides:

No registration shall be granted or remain in force unless the rules of the exchange in-

clude provision for the expulsion, suspension, or disciplining of a member for conduct or proceeding inconsistent with just and equitable principles of trade, and declare that the willful violation of any provisions of this chapter or any rule or regulation thereunder shall be considered conduct or proceeding inconsistent with just and equitable principles of trade.

Section 6(d), 15 U.S.C. § 78f(d), suggests that one purpose of Exchange rules is to protect investors.

erly to supervise Weis;[4] second, they claimed that the transfer of certain Weis customers' accounts to Ladenburg was wrongful.

Pretrial examinations of plaintiffs and a partial pretrial examination of a NYSE officer were conducted. Pursuant to plaintiffs' request the NYSE produced its entire files on Weis. Plaintiffs moved for class action certification (Rule 23, F.R.Civ.P.).[5] The NYSE (joined by Ladenburg) countered by a motion for Summary Judgment (Rule 56, F.R.Civ.P.) in its favor "on the ground that there are no genuine issues of material fact that plaintiffs have no provable damage", the principal thrust of the motion being that the plaintiffs' claimed damages were too speculative. The motion was supported by affidavits which confirmed the notice of motion that the ground was "no provable damage." Documents relating to damages, relied on by NYSE on its motion, were produced by plaintiffs. The NYSE filed a comprehensive memorandum designed to show both the speculative and miniscule nature of the damages claimed under such headings as "Interest in SIPC cash settlement", "Interest in frozen securities", "Adverse Tax Consequences", "Delays in dividend payments" and concluded that under no theory of law or fact were there provable damages.

The plaintiffs responded with an affidavit of their attorney, Alfred S. Julien, which named four categories of injury for which they assertedly were entitled to compensation in damages: (1) deprivation of the use of their assets for the period of time that it took the trustee to straighten out the affairs of Weis and return the securities and cash to its customers; (2) in instances where the plaintiffs received back odd lots of a particular security (units of other than 100 shares) when they had held round lots before the liquidation, the additional odd lot fee that will have to be paid when the securities are sold; (3) when cash was received instead of previously-held securities, the brokerage commissions required to be paid before the plaintiffs could regain their former investment position; and (4) losses stemming from adverse tax consequences incurred when as a result of having received cash instead of securities, plaintiffs (other than the West Side Profit Sharing Corp.) were forced to recognize a capital loss for tax purposes and were unable to take a full deduction in that year because they did not recognize any offsetting capital gains during the same period. *See* Int.

4. *Baird v. Franklin,* 141 F.2d 238 (2d Cir.), *cert. denied,* 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), recognized the duty of the New York Stock Exchange imposed by Section 6(b) "to investigate the dealings and the financial conditions of the members and to suspend or expel members who it had reason to believe had been guilty of conduct inconsistent with just and equitable principles of trade." 141 F.2d at 239. Although a majority of the court found that any failing on the part of the Exchange had not been the proximate cause of the plaintiff's losses, both the elaborate partial dissent by Judge Clark and the majority opinion by Judge Augustus Hand recognized that the Exchange might be liable to private investors for a breach of this duty. *Baird* also recognized that actual knowledge of member's misconduct was not a prerequisite to Exchange liability. *Id.* at 243. And subsequent decisions, while being careful not to hold the Exchange to a duty of supervision that is unrealistic have upheld claims on what is essentially a negligence standard. *See Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364 (7th Cir. 1974); *Butterman v. Walston & Co.,* 387 F.2d 822 (7th Cir. 1967), *cert. denied,* 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). *Steinberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* [1973–74 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,599 (S.D.N.Y.1974); *Marbury Management, Inc. v. Kohn,* 373 F.Supp. 140 (S.D.N.Y.1974); *Kroese v. New York Stock Exchange,* 227 F.Supp. 519 (S.D.N.Y. 1964); *Pettit v. American Stock Exchange,* 217 F.Supp. 21 (S.D.N.Y.1963). *Cf. Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

5. The defendants opposed certification of the case as a class action, but the district court never ruled on the propriety of a class action because the granting of summary judgment in favor of the defendants mooted the issue.

Rev.Code of 1954 § 1211(b). The Julien affidavit also purported to state the heart of the plaintiffs' claims:

The position of the plaintiffs in this action is clearly spelled out in the complaint and is in short that had the New York Stock Exchange properly and adequately policed and supervised Weis . . . then Weis would never have been allowed to reach a point where its financial difficulties were such that a SIPC Trustee would have to be appointed and the plaintiffs suffering various damages as will be set out below.

Plaintiffs' claim that their position is "clearly spelled out in the complaint" is rather definitely belied by the complaint itself. However, on a Rule 56 motion the court is not restricted to the complaint or its deficiencies. And in a reply memorandum defendants conceded that by way of the Julien affidavit the plaintiffs had introduced a new theory of liability, namely that Weis would not have reached the point of financial difficulty if NYSE had properly policed Weis pursuant to section 6 of the Exchange Act, but claimed that such a theory was "nowhere pleaded in the second amended complaint" and that the complaint was restricted to acts of NYSE in April and May 1973.

From the affidavits and exhibits there was a sufficient basis for finding the following facts:

In mid-April 1973, the NYSE was informed by several principals of Weis that Weis for an unknown period of time may have been seriously understating its operating losses in periodic reports to the NYSE. The NYSE immediately undertook an intensive investigation to ascertain the extent of Weis' financial difficulties. A merger of Weis with Ladenburg was proposed, and, as an interim measure, the NYSE concurred in the transfer of some large margin accounts from Weis to Ladenburg. Because bro-

ker-dealers themselves normally borrow in order to finance customers' margin purchases, the transfer of the margin accounts and assumption of the indebtedness by Ladenburg would have had the effect of freeing Weis from its obligations to those banks which had financed the purchases of securities in these accounts, thereby reducing Weis' liabilities and reducing its ratio of debt to capital. According to the NYSE, such a transfer of margin accounts is a widely accepted method of improving a firm's liquidity, thereby promoting financial stability and helping to assure customer safety pending a merger.

The merger between Weis and Ladenburg was never consummated. On May 24, 1973, the NYSE suspended Weis, and court proceedings were commenced by the Securities Investor Protection Corp. (SIPC) under the provisions of the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*[6] Within a week, a trustee had been appointed to supervise the liquidation of Weis. In accordance with the provisions of the Act, brokerage customers who maintained accounts at Weis and left their securities in the custody of the firm received their actual securities insofar as feasible. To the extent that there were shortages in available securities, customers received cash for their securities at their May 24, 1973, value (less, in the case of holders of margin accounts, amounts owed to Weis). And although Weis customers were deprived of possession of their securities for periods of time ranging from a matter of weeks up to several months, virtually all of Weis' 35,000 brokerage customers either received their securities or were compensated for their value in cash.

*The Opinion of the District Court*

The court quite correctly found that plaintiffs' claims were based on two theories only: (1) failure to supervise and

---

**6.** According to one commentator, before seeking liquidation, SIPC generally prefers to allow the Exchange to attempt to improve a member

firm's financial condition. Note, *The Securities Investor Protection Act of 1970: An Early Assessment*, 73 Colum.L.Rev. 802, 810 (1973).

discipline Weis; and (2) the transfer of the large margin accounts to other brokers. The court recognized that the summary judgment motion was based on the "no provable damages" theory but held that it "need not reach this point." Again quite properly the court held that "speculative, remote or conjectural damages cannot be recovered" but said that if defendants' tortious conduct produced damage that plaintiffs could recover the "traditional measure of damages for wrongful distraint of a chattel . . . or wrongful failure to pay money when due." 379 F.Supp. at 1125 (citation and footnote omitted). However, the court held that it did not need to "reach this [damages] issue because, upon uncontested facts and evidence presented in the affidavits on this motion and the depositions, no cause of action exists in plaintiffs' favor." *Id.* In short, the court, despite the stated restriction of the motion to damages,[7] decided the case on the merits.

The court further found that "the Exchange had no notice, and, through the exercise of reasonable diligence, did not and could not have learned prior to mid-April 1973 that Weis was in violation of the Exchange's capital requirements." 379 F.Supp. at 1126. But this is a material fact to which the parties did not address themselves and as to which there is no proof. In fact on oral argument counsel for the NYSE stated that "we purposely avoided the merits in our motion for summary judgment." Their claim was that "the action could not be maintained because there were no provable damages."

As to the alleged failure of NYSE to enforce its net capital rule,[8] the district court found that NYSE had acted both promptly and in accordance with accepted SEC practice in attempting to salvage

Weis by approving a proposed merger with Ladenburg and an interim transfer of margin accounts. With respect to the violation of Rule 10b–5 allegedly committed in connection with this transfer of margin accounts, the district court found that the plaintiffs had adduced no evidence of scienter required for recovery under Rule 10b–5. *Segal v. Gordon,* 467 F.2d 602 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442 (2d Cir. 1971). That is to say, there was no indication that the transfers were anything other than a good faith measure calculated to protect all of Weis' customers by stabliizing the company's financial condition. Additionally, the district court found that the transfers were not the proximate cause of any damages the plaintiffs may have incurred.

Based upon the foregoing conclusions, the district court entered final judgment in favor of all defendants.

The defendants' approach is quite the reverse of usual procedure which is first, to determine liability, then, if liability be found, try to establish damages. In this case defendants have endeavored to prove no possible damages on any theory and if successful then claim no liability. The trial court, however, did not follow this theory. It said: "Liability should attach only if plaintiff demonstrates that the Exchange had reason to believe or suspect that a member firm was in violation of the rules, and then failed or refused to take remedial action, which failure to act resulted in an injury to the plaintiff." 379 F.Supp. at 1126. Any such demonstration, however, would involve questions of fact with which the parties did not concern themselves because of the nature of the NYSE motion. Furthermore, proof, contested or otherwise, relevant to such an issue was not before the trial court.

---

7. The motion was briefed and argued on the damage question alone. None of the parties addressed the substance of the plaintiffs' allegations except insofar as they related indirectly to the question of damages.

8. Member firms of the NYSE and other major exchanges are exempt from the Securities and Exchange Commission's net capital rules. 17 C.F.R. § 15c3–1(b)(2) (1974). The NYSE's own Rule 325 (net capital rule) prescribes the permissible ratio of a member firm's aggregate indebtedness to its capital (currently, the ratio may be no lower than 15 to 1). CCH NYSE Guide ¶ 2325.

Pleadings are intended to facilitate decisions on the merits. *United States v. Hougham,* 364 U.S. 310, 317, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960), quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To that end, Rule 8(f) directs that "[a]ll pleadings shall be so construed as to do substantial justice," and Rule 15(a) mandates that leave to amend pleadings "shall be freely given when justice so requires", an approach which the Supreme Court has strongly endorsed. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ At the threshold of this litigation it is essential that the charges against the defendants be made with definiteness and with specificity. Only thus can the defendants know the issues they will have to meet. For example, in the first cause of action plaintiffs allege that in April and May 1973 defendants had knowledge that Weis was in violation of NYSE rules. In the fifth cause of action, knowledge is alleged without specification of any time period. The plaintiffs' real claim, as suggested on oral arugment and in the Julien affidavit, is that proper Exchange supervision and enforcement from 1971 to 1973 would have prevented Weis from arriving at the precarious financial state already existing in April 1973, and that it was the NYSE's alleged breach of its duty that eventually necessitated the SIPC-supervised liquidation of Weis.

Even in these days of relaxed pleadings an orderly trial should still be conducted according to the *"allegata et probata."* Thus, if, for example, plaintiffs' proof established that only in April and May of 1973 did defendants have knowledge of any possible violations by Weis, and prior to that time could not reasonably have had such knowledge, then the action taken by the NYSE under the circumstances might well defeat the first cause of action. Furthermore, plaintiffs would be burdened with the necessity of showing that the actions then taken by NYSE and Ladenburg were the proximate cause of any damages plaintiffs may have suffered.

■ It would be inappropriate at this time for this court to speculate as to the facts which ultimately will be determinative. The trial court can pass upon the legal effect of NYSE's actions or non-actions. It, too, can control the scope of proof as to damages, if any, within established principles of law that they not be "speculative, remote or conjectural". The extent of any discovery, which may be sought by plaintiffs, should also be addressed to material issues and will be within the discretion of the trial court. But first there must be a complaint clearly stating the charges which plaintiffs make and must prove by a preponderance of the evidence.[9] And just as it would be unfair to plaintiffs to hold them to a judgment based on issues of which they had no warning, so also would it be unfair to defendants to have them faced with pre-April and May 1973 charges and possible discovery thereon without a "clear and concise" statement thereof.

Accordingly, because we believe that this controversy does not lend itself to summary judgment procedure at this stage, we reverse the judgment of dismissal and remand the case to the district court with instructions to allow plaintiffs to serve a third amended complaint, if they so desire, alleging such cause or causes of action against defendants, as they believe they may have, covering the pre-April and May 1973 period which are not barred by any applicable statute of limitations.

I also agree with the last paragraph of Judge Feinberg's separate concurring opinion.

FEINBERG, Circuit Judge (concurring):

■ I concur in the reversal of the judgment of the district court dismissing the complaint. I agree with Judge

---

**9.** The bare allegations in the fifth cause of action stated in the complaint are scarcely sufficient for this purpose.

Moore that plaintiffs' papers in the district court did present, however inartfully, a claim based upon the NYSE's failure to use reasonable diligence in supervising Weis in the period 1971–1973. On that theory, plaintiffs might be able to prove that had the NYSE been more diligent Weis would not have gone as deeply into debt and might have been saved. See Julien affidavit quoted at p. 156 of Judge Moore's opinion. Then plaintiffs could try to prove all the elements of damages flowing from the SIPC liquidation, spelled out at p. 155 of Judge Moore's opinion, although, of course, I express no view as to plaintiffs' chance of success. For that reason, the entry of summary judgment for defendants was improper.

However, on remand, it would still be appropriate for the district court to narrow the issues before it considerably. There is no allegation in the complaint or in the papers on the summary judgment motion that the entry of Ladenburg into the affairs of Weis in any way caused the SIPC liquidation. It is quite clear that by the time Ladenburg entered the picture, Weis was already moribund. Thus, whether plaintiffs found out about the true condition of Weis six weeks earlier or not,[*] the liquidation would have followed and plaintiffs would have suffered all the damages of which they now complain. Therefore, there is no reason to allow the case to continue on any theory other than plaintiffs' claim that the NYSE's failure to supervise in the period 1971–1973 caused Weis's liquidation and plaintiffs' alleged damages.

MANSFIELD, Circuit Judge (dissenting):

The majority permits the plaintiffs, who have been unable after two attempts to state a valid claim for provable damages, to file a third amended complaint which would state a new claim on a different theory with respect to a different period of time (i. e., 1971–72

instead of April–May 1973), based solely on a speculative argument advanced by plaintiffs' counsel long after the second amended complaint had been filed. With due respect, I believe that the inordinately excessive measures taken to rescue a patently meritless complaint from dismissal are both unwise and impermissible.

The second amended complaint states two claims, one based on a transfer of margin accounts to other brokers, and the other against the New York Stock Exchange for failure to supervise Weis. As the complaint repeatedly indicates by referring to the period of April–May 1973, both claims are based upon actions taken after Weis' financial difficulties came to light in April 1973. Both claims, as the majority seems to imply, must be dismissed because of failure to allege or show any provable damages proximately resulting to the plaintiffs from the transfer or from the lack of supervision of Weis by the New York Stock Exchange.

Apparently recognizing the insufficiency of the second amended complaint, plaintiffs' counsel has now suggested a new theory, namely, that if the New York Stock Exchange had properly supervised Weis at an earlier point in time, i. e., during 1971 and 1972, the liquidation of Weis might have been avoided. Plaintiffs make no claim, however, that they did not have sufficient knowledge of the facts regarding the earlier period to raise this new theory in their second amended complaint. They should not now be allowed to take advantage of the Federal Rules' policy of liberal amendment of pleadings to remedy their own apparent lack of diligence. Cf. *Freeman v. Continental Gin Co.,* 381 F.2d 459, 468–70 (5th Cir. 1967); *Vine v. Beneficial Finance Co.,* 374 F.2d 627, 636–37 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). Moreover, in the absence of some supporting facts, it seems to me that at this late date we should not remand for the pur-

---

[*] The NYSE allegedly learned of Weis's troubles in mid-April 1973; the SIPC liquidation commenced at the end of May.

pose of permitting plaintiffs to sally forth with this entirely new and speculative theory. There being no new allegations of facts indicating that any damages were proximately caused to plaintiffs under the latest theory, i. e., failure of the New York Stock Exchange to supervise Weis during the earlier period, I would affirm the district court's decision.