CLINTON HUDSON & SONS et al.

v.

LEHIGH VALLEY COOPERATIVE FARMS, INC., et al.

Civ. A. No. 75–3208.

United States District Court,
E. D. Pennsylvania.

Jan. 10, 1977.

**422**

Arnold Levin, Philadelphia, Pa., for plaintiffs.

Donald A. Scott, Joseph Neff Ewing, Jr., Janet Duffy Carson, Philadelphia, Pa., John E. Roberts, Allentown, Pa., for defendants.

## OPINION

DITTER, District Judge.

Plaintiffs are stockholders of a dairy co-operative. They seek damages in their individual and representative capacities on the grounds that their shares were reduced in value by various fraudulent and illegal practices for which defendants were responsible.

Clinton Hudson, Lewis Hudson, Roger A. Hudson and Clinton Hudson & Sons (hereafter "Hudson") instituted this action alleging violations of the securities laws of the United States and the Business Corporation Law of Pennsylvania and that they were victims of common law fraud. They seek to maintain this suit as shareholders in their own right, as class representatives for all similarly situated shareholders,[1] and deriva-

---

1. I shall not consider plaintiffs' claims with regard to class representation, since they have only recently filed a motion for class action certification and defendants have not briefed

tively, under F.R.Civ.P. 23.1, on behalf of the corporation. The defendants are Lehigh Valley Cooperative Farmers (hereafter "Lehigh Valley"), Messrs. Fox, Ruth, Richard, Sollenberger, Melchor and Hess, who presently are directors of Lehigh Valley, Richard Allison and Daniel B. Wanner, the former president and comptroller respectively of Lehigh Valley, and Ernst & Ernst, a public accounting firm. Presently before the court are the motions to dismiss of all the defendants, except Richard Allison,[2] which, for the reasons hereafter advanced, will be granted.

The complaint alleges that plaintiff, Clinton Hudson, purchased 40 shares of Lehigh Valley common stock and 100 shares of Lehigh Valley preferred stock sometime, and not necessarily at the same time, in 1964. Plaintiff[3] asserts that the defendants prepared various financial statements which contained misrepresentations and failed to provide certain information. In turn, this conduct led to Hudson's making improper determinations as to Lehigh Valley's financial status, induced him to purchase the Lehigh Valley stock, and caused him to remain a stockholder thereafter. Plaintiff further contends that defendants engaged in and failed to disclose the following illegal and fraudulent acts: (1) illegal bids, bribes and kickbacks unknown to plaintiff but capable to discovery; (2) falsification of financial statements to justify illegal assessments of Lehigh Valley stockholders; (3) failure to provide information as to debts through proper statements and accounting practices; and (4) partaking in illegal campaign contributions.[4] Plaintiff

further alleges that Clinton Hudson, sometime in 1970, tendered 64 shares of stock to Lehigh Valley but received no money as a result of this tender.

## I. The Federal Securities Violations

### A. The Individual Claim[5] (Count 1)

In his first cause of action, Hudson alleges that defendants violated Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j.

Section 10(b) of the 1934 Act and its regulatory equivalent, SEC Rule 10b–5, make it unlawful to deceive or mislead in connection with the purchase or sale of any security. Standing to bring a private action for damages is limited to actual purchasers or sellers. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139 (3d Cir. 1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). There is no doubt that plaintiff has alleged Clinton Hudson purchased Lehigh Valley stock, but defendants contend that plaintiff's allegations of fraud are non-specific and do not satisfy the "in connection with" requirement of the rule. They also question Clinton Hudson's status as a seller. Because these questions deal with plaintiff's fulfilling the *Blue Chip* requirements to be either a securities purchaser or seller,

this point. In addition, any decision on that motion would naturally have to await a determination of plaintiffs' ability to maintain their causes of action in any capacity.

2. Default was entered against Mr. Allison on May 20, 1976.

3. Hereafter, I shall refer to plaintiff as "Hudson" and in the singular.

4. Complaint, paragraph 31.

5. For the purpose of argument, I shall consider only Clinton Hudson's claim for damage resulting from defendant's alleged conduct. Al-

though plaintiffs have asserted that Clinton Hudson purchased the shares for their partnership, the record does not indicate that the stock was placed in the partnership's name nor does it indicate that any of the other plaintiffs purchased or sold any Lehigh Valley stock, a necessary element in maintaining federal securities laws causes of action. See discussion *infra*. In addition, I need not discuss defendants' argument that the certificates involved were not "securities," since this point was not pressed at oral argument and proper disposition of this action can be made without this consideration.

I shall deal with each transaction separately.

### 1. Necessity for Specific Allegations of Fraud in Connection with 1964 Purchase.

Defendants first base their motion to dismiss on the theory that the complaint fails to state with particularity the circumstances constituting fraud on their part, as required by F.R.Civ.P. Rule 9(b). "Mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." [citation omitted]. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972). Rather, the complaint should at least identify the particular defendants who allegedly dealt with the plaintiff and describe the circumstances constituting the fraud, such as the time, place and contents of the alleged fraudulent scheme or misrepresentation. *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757 (D.Colo.1964); 5 *C. Wright & A. Miller, Federal Practice and Procedure* § 1297, at 403. This rule is designed to ensure that the allegations are concrete enough to give notice to the defendants and to enable them to frame an answer and to prevent injury to reputation from cavalier allegations of fraud. *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 245 (S.D.N.Y.), rev'd on other grounds sub. nom., *Rich v. New York Stock Exchange*, 522 F.2d 153 (2d Cir. 1975); *Lewis v. Black*, 5 CCH Fed Sec.L.Rep. ¶ 95,638 (E.D.N.Y. March 31, 1976).

In order to sustain his claim at trial, Clinton Hudson would have to demonstrate that he relied on certain false statements and financial reports issued by the defendants to his detriment; at this stage of the proceeding, his pleading should not be judged by such a standard. *Rich v. Touche Ross & Co.*, supra, 68 F.R.D. at 247. However, to bring this action he must be able to identify what financial statements and reports he relied on, in what respect they were false, misleading or inaccurate, and the relative time frame involved. The complaint is replete with allegations of "illegal conduct," "misdeeds,"[6] "conspiracy" and "fraudulent and deceitful manner"[7] of conduct, but these conclusory assertions tracking the language of 10b–5 simply do not pass muster under Rule 9(b). *Felton v. Walston and Co., Inc.*, 508 F.2d 577, 580–81 (2d Cir. 1974); *Reiver v. Photo Motion Corp.*, 325 F.Supp. 214, 216 (E.D.Pa.1971).

Hudson argues that despite these defects, he should be permitted to proceed upon his amended complaint and conduct discovery against the defendants so that he can subsequently allege the fraud with the requisite particularity. This he may not be permitted to do. "A complaint alleging fraud should be filed only after a wrong is *reasonably* believed to have occurred; it should serve to seek redress for a wrong, *not to find one.*" [emphasis supplied]. *Segal v. Gordon*, supra, 467 F.2d at 607–08; *Rich v. Touche Ross & Co.*, supra, 68 F.R.D. at 247. Plaintiff points to three cases in this district, i. e., *Beissinger v. Rockwood Computer Corp.*, Civil Action 75–2449 (E.D. Pa., filed July 13, 1976), slip op. at page 6, *B & B Investment Club v. Kleinert's, Inc.*, 391 F.Supp. 720 (E.D.Pa.1975); and *Fox v. Prudent Resources Trust*, 382 F.Supp. 81 (E.D. Pa.1974), where such discovery was allowed, but it is obvious that the allegations of fraud advanced by plaintiffs in those cases sufficiently apprised the defendants of the basic transactions on which the claims of fraud were based before discovery ensued. *B & B Investment Club*, supra, 391 F.Supp. at 727. The amended complaint here fails to satisfy the requirements for pleading fraud, and the 10b–5 claim in Count 1 must be dismissed for this reason.[8]

---

6. Complaint, paragraph 32.

7. Complaint, paragraphs 41, 48 and 53.

8. There remains the question of whether plaintiff may have a private cause of action under Section 17(a) of the Securities Act of 1933. The Supreme Court in *Blue Chip*, supra, 95 S.Ct. at 1924 n. 6, expressed no opinion on this issue in light of other civil remedies under the 1933 Act. Judge Gorbey, in *Crowell v. Pittsburgh & Lake Erie Railroad Co.*, 373 F.Supp. 1303, 1311 (E.D.Pa.1974), concluded that such a cause of action does exist, while some courts

Defendants additionally argue that, even if fraud had been sufficiently pleaded, the "in connection with" requirement of a securities action has not been satisfied, pointing out that there must be a "causal connection between the alleged fraud and the purchase or sale of stock." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976). This "connection" requirement has been rather broadly construed, as demonstrated by Justice Douglas' holding in *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), wherein he concluded that all a party need show was an injury suffered as a result of the deceptive practices "touching" the investors' sale of his securities. This "touch" principle, has, of course, been expanded to purchases of securities. See *Tully*, supra, 540 F.2d at 194. However, no matter how hospitable my approach may be in analyzing the instant pleadings, the requisite causal connection is just not present.

██ For the alleged fraudulent activity to have touched Mr. Hudson's stock acquisitions in 1964, it must have occurred sometime prior to or contemporaneous with those purchases. Yet a search of the complaint and amended complaint indicates no such assertion. In fact, the earliest activity complained of appears to have taken place sometime subsequent to 1969.[9] Ordinarily, specific dates of circumstances giving rise to or constituting fraud are not significant, so long as there is some temporal relationship between the events and the purchase of stock. But here, where the activity alleged to be fraudulent occurs five years after the purchase, plaintiff's claims against the defendants amount to nothing more than the hindsight observations that because of their 1969 activities, the defend-

ants must have contemplated doing wrong prior to that time and must have been doing so in 1964. See *Lewis v. Black,* supra, at 90, 167. These allegations are not supported at all: "they remain bare assertions that imposes (sic) on recited events a gratuitous imputation of misconduct that does not flow as an inference from the facts put forward." *Segal v. Coburn Corp. of America,* [1973 Transfer Binder], CCH Fed.Sec.L. Rep. ¶ 94,002, at 94,020 (E.D.N.Y.1973). The "in connection with" requisite is absent here, and defendants' motion to dismiss must be granted for that additional reason.

### 2. The 1970 Tender

Needless to say, plaintiff's deficiencies in alleging fraud and in failing to satisfy the "in connection with" requirement apply with equal force to his ability to allege Section 10(b) and Section 17(a) violations with regard to his tender in 1970. Moreover, his status as a seller must be seriously questioned. He asserts that, because of the rosy financial picture painted by the defendants, he was induced to defer a sale of his securities and that when he did attempt to dispose of his shares, his tender was refused by Lehigh Valley.

Since *Birnbaum v. Newport Steel Corp.,* courts have given a liberal construction to what situations give rise to one's being a seller. For example, a corporation's issuing its own shares has been held to be a sale under Section 10(b), *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); a shareholder can assume the status of a forced seller when he is a minority stockholder in a corporation which has undergone a short form merger, *Vine v. Beneficial Finance*

---

have chosen to resolve the issue as irrelevant where other claims were asserted under the 1934 Act. *Schaefer v. First Nat'l Bank of Lincolnwood,* 509 F.2d 1287, 1293 (7th Cir. 1975); *Unicorn Field, Inc. v. Cannon Group, Inc.,* 60 F.R.D. 217, 224 (S.D.N.Y.1973). Other courts have simply held that there is no cause of action. See *Reid v. Mann,* 381 F.Supp. 525, 527 (N.D.Ill.1974), and the cases cited therein.

Assuming a private cause of action does exist, plaintiff may not pursue it here, for he is

bound by the same defects which plague his Section 10(b) claim, i. e., the failure to plead the alleged fraudulent activity with specificity.

9. These activities are related in paragraph 31 of the amended complaint. The allegation that they occurred sometime in 1969 is not present in the amended complaint but can be found in Plaintiff's Brief in Opposition to Defendant Warner's Motion to Dismiss at page 6.

*Co.*, 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); an exchange of shares in connection with a merger or sale of assets has been held to be a sale, *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Additionally, the purchaser or seller rule imposes no limitation on one to bring a suit for injunctive relief. *SEC v. National Securities, Inc.*, supra; *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), cert. denied sub nom., *Glen Alden Corp. v. Kahan*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). However, the court in *Blue Chip* refused to ignore the language of § 10(b) and effectively halted this expansion by holding that only if plaintiff has an enforceable contractual right will he be entitled to fit into an exception to the rigid requirements of *Birnbaum*. In doing so, it expressly deleted from Section 10(b)'s definition events such as offers and advertisements. *Blue Chip Stamps*, supra, 95 S.Ct. at 1924 n. 5 and 1932 n. 13.

■ Clearly then, only if Mr. Hudson could claim that Lehigh Valley was under a contractual duty to buy his shares could he qualify as a seller. But this has simply not been alleged. Plaintiff has averred that he tendered the shares back to the cooperative and received no money for the stock, but whatever the usual practice at Lehigh Valley [10] this assertion falls far short of contending there was any contractual duty to buy or right to sell.

■ Plaintiff also attempts to secure standing as a seller by alleging that he was forced to retain the stock to his detriment. However, most courts considering this issue have held "that there is no federal right of action for fraud allegedly committed for the purpose of inducing the retention of a security, as distinguished from its purchase or sale." *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154, 1174 (S.D.N.Y.1974);

*Bleznak v. C.G.S. Scientific Corp.*, 61 F.R.D. 493, 498 (E.D.Pa.1973).

In summary, plaintiff has failed to assert he was either a buyer or a seller as those terms are used in a federal securities law violation case and accordingly may not pursue his Section 10(b) and Section 17(a) actions individually.

### B. The Derivative Claim (Count 4)

■ Plaintiff also attempts to maintain his Section 10(b) claim by bringing a derivative action on behalf of the corporation. Although shareholders who were induced not to sell their shares because of misrepresentations of the corporate financial status or those who suffered diminution in the value of their investment due to fraudulent activity may not bring individual causes of action, it has been held that these stockholders may circumvent the rigid *Birnbaum* limitation by bringing derivative actions. However, such actions may be brought only if the corporation itself was a purchaser or seller of securities. *Blue Chip Stamps*, supra, 95 S.Ct. at 1917; *Schoenbaum v. Firstbrook*, 405 F.2d 215, 219 (2d Cir. 1968), cert. denied sub nom., *Manley v. Schoenbaum*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). Since no purchase or sale on Lehigh Valley's part has been asserted by plaintiff and since none appears of record, it is clear that plaintiff may not maintain a Section 10(b) derivative action.

### II. The State and Common Law Claims

Plaintiff also seeks to maintain causes of action under the Business Corporation Law of Pennsylvania, 15 P.S. § 1401 et seq., and on common law fraud grounds. Since plaintiff's ability to pursue these claims either individually or derivatively depends on resolution of various questions of law, I shall also consider them separately.

---

10. At oral argument, it was revealed that a secretary at Lehigh Valley customarily accepted the stock certificates of shareholders desiring to sell their shares, placed them in her desk drawer and held onto them until approached by someone else desiring to purchase stock in the cooperative. The funds used to purchase such stock were then transferred to the original party. From this it appears that Lehigh Valley's participation was intended only to aid in the sale, and it at no time reacquired an interest in the stock.

*A. Plaintiffs' Ability to Maintain his Individual Actions (Counts 2 and 3).*

Plaintiff contends that he is entitled. to bring an individual action against the corporation and its directors, asserting that he, and the class he purports to represent, suffered direct injuries as the result of illegal assessment against Lehigh Valley stockholders caused by the activities alleged to be fraudulent. Defendants contest this position and argue that the matter is one more properly brought as a derivative action.

 It is well-established that where the alleged wrong is primarily against the corporation, redress for that wrong must be sought by the corporation in the form of a derivative action. An action is derivative "if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *In Re Penn Central Securities Litigation*, 347 F.Supp. 1324, 1326 (E.D.Pa. 1972), quoting 13 *Fletcher, Cyclopedia of Corporations* § 5911, at 285; see also *Reifsnyder v. Pittsburgh Outdoor Advertising Co.*, 405 Pa. 142, 173 A.2d 319 (1961). There exists, however, an equally well-recognized exception to this rule:

Where the act complained of creates not only a cause of action in favor of the corporation but also creates a cause of

action in favor of the stockholder, as an individual, for violation of a duty owing directly to him, the stockholder may bring suit as an individual. *Empire Life Ins. Co. of America v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir. 1972).

See also *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893 (5th Cir. 1968). Generally, if the cause of action is based on acts which relate *solely* to the stock owned by the plaintiff, it is an individual action.[11] But if the action is based on acts relating to a particular class of stock or the stock in its entirety, it is a corporate cause of action. 13 *Fletcher*, supra, § 5915, at 296.[12]

 A review of plaintiff's contentions and those authorities creating the exception for an individual right of action has convinced me that the exception is not applicable here. It is clear that there was no duty owed to the plaintiff individually by the defendants other than that duty owed to him as a stockholder, and any alleged harm that he did suffer by way of the alleged illegal assessments was connected with acts taken against all the shareholders of the cooperative's capital stock. For this reason, I conclude that plaintiff may not maintain his action individually.[13]

 Even if I were to conclude that plaintiff had sufficiently shown a direct and personal injury, his complaint suffers from a number of fatal defects which make his individual causes of action incapable of being maintained. First, plaintiff concedes

---

**11.** Other individual actions may be brought: (1) actions based on implied contract to pay the stockholder; (2) actions relating to the right to vote at stockholder's meetings; (3) actions to obtain inspection of corporate records and books; and (4) acts depriving one of certain advantages because of his minority stockholder status, etc. See 13 *Fletcher, Cyclopedia of Corporations* § 5915, at 295.

**12.** In addition, plaintiff does not acquire standing to maintain the action individually where he alleges diminution in the value of his shares of stock. *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970); otherwise, each shareholder could sue for his loss, with the possible result of as many suits as shareholders. *Empire Life Ins. Co.*, supra, 468 F.2d at 335.

**13.** Plaintiff, in paragraph 49 of the Amended Complaint, has also charged the defendant directors with a breach of their fiduciary duties to the cooperative and mismanagement of the corporate property. Despite plaintiff's contentions to the contrary, this too is an action that can only be maintained derivatively.

"It is established in Pennsylvania as elsewhere that a suit against directors for malfeasance or misappropriation of corporate property is not one which can be maintained by the shareholder in his individual capacity but that in such a suit he acts for the corporation in seeking damages or restitution of corporate property and the suit is therefore derivative in nature." *Knapp v. Bankers Securities Corp.*, 230 F.2d 717, 720 (3d Cir. 1956).

that he does not possess diversity of citizenship as to the accounting firm, Ernst & Ernst. Eight partners in that firm are citizens of Maryland,[14] as is Hudson, and "for purposes of diversity jurisdiction the citizenships of the members of the respective unincorporated associations . . . have to be shown to be diverse." *Underwood v. Maloney*, 256 F.2d 334, 341 (3d Cir.), cert. denied, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1968). Thus, plaintiff and Ernst & Ernst are both citizens of Maryland and diversity does not exist. Second, with reference to the defendants who are directors of Lehigh, plaintiff has failed to plead diversity at all. It is not enough to allege that these defendants are individuals and directors of Lehigh Valley (Complaint, paragraphs 12–18); citizenship must be distinctly and affirmatively averred. 2A Moore's Federal Practice § 8.10, at 1662. This appears to be a minor defect which might not independently warrant an action so severe as dismissal, but it must be remembered that this is an amended complaint and that plaintiff has also failed to sustain his burden in pleading fraud.

 Whether the action be under federal, state or even common law, any allegation of fraud must be plead with the requisite specificity according to the dictates of F.R.Civ.P. Rule 9(b) and efforts to characterize the activity as fraudulent, conspiratorial and deceitful simply do not suffice. Therefore, plaintiff, even assuming he had adequately stated diversity of jurisdiction, may not maintain Counts 2 and 3 as individual actions against any of the defendants.

### B. The Derivative Actions (Counts 5 and 6)

The defendants also challenge plaintiff's right to bring a derivative action based on their alleged wrongs and misrepresentations. They assert that the cooperative is presently enforcing its rights against the defendants in a state suit, brought in the

Court of Common Pleas of Lehigh County, which is grounded on allegations similar to those propounded here by plaintiff. Defendants assert that the existence of this suit, filed before plaintiff amended his complaint to allege his derivative claim,[15] precludes plaintiff's maintaining his present action. In addition, they allege that the plaintiff failed to conform to the initial demand requirement of F.R.Civ.P. Rule 23.1 which provides that the

. . . complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Plaintiff answers this two-part argument by first stating that the action in Lehigh County is not truly a derivative action. He asserts that the action was brought after he had filed his original complaint and was instituted by the cooperative as a means of recovering the losses which would occur from the present litigation. Second, he contends that it was not necessary for him to make a demand upon the directors where it was readily apparent that they were antagonistic toward him and where the demand would be nothing more than a futile gesture.

 Addressing plaintiff's second contention first, it is clear that one element of a properly filed derivative action is the allegation with particularity of the plaintiff's efforts to obtain action or his reasons for not making the effort. This requirement is more than an antiquated remanent of notice pleading. *Royston v. Eastern Empire Corporation*, 393 F.Supp. 1010, 1014 (E.D.Pa.1975). An action can be

. . . maintained only if the stockholder shall allege and prove that the directors of the corporation are personal-

---

**14.** See Affidavit of Charles H. Hoffman.

**15.** It must be noted that plaintiff only amended his complaint to allege the derivative counts

when the above issues concerning his right to bring individual actions were raised by the defendants' original motions to dismiss.

ly involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way. [citations omitted]. *Ash v. International Business Machines*, 353 F.2d 491, 493 (3d Cir. 1965). Here, plaintiff's assertion [16] amounts to nothing more than a conclusion that his efforts would have been futile. Such a vague allegation is wholly inadequate and fails to satisfy the standards of Rule 23.1 as interpreted by this Circuit. Therefore, Counts 3 and 6 must be dismissed for this reason.

Plaintiff's argument that the subsequent suit brought in Lehigh County is not a true derivative action also fails. At issue is the fact that Lehigh Valley originally named only Ernst & Ernst and Richard Allison as defendants; subsequently all of the other directors were joined as additional defendants. If this was a federal action, the joinder of the directors would operate only to subject the additional defendants to liability over to the original defendants and the cooperative could not recover against the directors. See *National Mutual Insurance Co. v. Liberty Mutual Ins. Co.*, 90 U.S.App.D.C. 362, 196 F.2d 597, 598, cert. denied, 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638 (1952); *Frankel v. Back*, 37 F.R.D. 545, 547 (E.D.Pa.1965); 3 *Moore's Federal Practice* § 14.16[1], at 375; F.R. Civ.P. 14(a). This could possibly lead to the result argued by plaintiff, i. e., the mitigation of damages of all the defendants to the detriment of the cooperative. But the procedural rules of Pennsylvania and Federal courts differ materially in this regard, and in state court actions the plaintiff may recover directly against third-party defendants. *Campbell v. Meadow Gold Products Co.*, 52 F.R.D. 165, 168 (E.D.Pa.1971); Pa.R. Civ.P. 2255(d). The plaintiff need not introduce any evidence or make any claim against the additional defendants to take advantage of this rule; it is sufficient that the facts show the additional defendants are liable, whether solely to the plaintiff or jointly with the original defendants. *Sheriff v. Eisele*, 381 Pa. 33, 112 A.2d 165 (1955); 3 *Goodrich-Amram* § 2255(d)–8, at 105–06. Because of this, Lehigh Valley can recover against any or all of the directors as well as Ernst & Ernst and not be affected by any mitigation of damages that could result from the counterclaims filed by the defendants against each other. After a review of the pertinent pleadings in this suit and in the state court action, I am convinced that the actions are more than substantially similar—they are the same. Thus, maintenance of plaintiff's derivative action in this forum could only result in duplicative efforts and results. It follows that Counts 3 and 6 must be dismissed.

### III. Conclusion

Plaintiff has advanced several reasons why this court possesses jurisdiction in this action, but careful analysis demonstrates that he may not pursue his claims at this time. In particular, is failure to plead the alleged fraudulent activity with the requisite specificity prohibits maintenance of his claim of federal securities law violations under Sections 10(b) and 17 and his state and common law claims of fraud. Litigating the issues raised by plaintiff in his derivative counts will result in nothing more than duplication of effort since the cooperative is actively pursuing the same issues in its state court action. Finally, having reached a decision dismissing plaintiff's federal claims, I may not hear his state and common law claims under the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, defendants' motions to dismiss are granted and plaintiff's complaint dismissed as to all counts.

---

16. "Plaintiff has made no effort to secure action from the directors of the corporation as such effort would be futile in light of the fact that Lehigh Valley Cooperative Farmers, Inc. have been on notice of this claim since November 7, 1975 and have not instituted their own derivative action." Amended Complaint, par. 58.